IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| KWAME DADZIE, | Case No. 3:18-cv-518 |
| Plaintiff, | JUDGE JACK ZOUHARY |
| v. | MAGISTRATE JUDGE THOMAS M. PARKER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| | **REPORT & RECOMMENDATION** |
| Defendant. | |

**I.     Introduction**

Plaintiff, Kwame Masumba Dadzie, seeks judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act.[1]  This matter is before the court pursuant to 42 U.S.C. § 405(g), 42 U.S.C. § 1383(c)(3) and Local Rule 72.2(b).  Because: (1) substantial evidence supports the ALJ's decision; (2) Dadzie has failed to identify any error of law; and (3) there is no obvious error in the ALJ's evaluation of Dadzie's claim, I recommend that the final decision of the Commissioner be AFFIRMED.

**II.    Procedural History**

Dadzie protectively applied for disability insurance benefits on April 10, 2015.  (Tr. 11, 250).  His application was denied initially on August 24, 2015 (Tr. 112) and after reconsideration

---

[1] At the administrative hearing, the ALJ indicated that this was only a Title II case for DIB, though it had been worked up as both.  (Tr. 33).

on November 12, 2015. (Tr. 117). Dadzie requested an administrative hearing (Tr. 126), and Administrative Law Judge ("ALJ") Richard Horowitz heard the case on December 1, 2016. (Tr. 31-80). The ALJ found that Dadzie was not disabled in an April 4, 2017 decision. (Tr. 11-24). On January 8, 2018, the Appeals Council denied Dadzie's request for review, rendering the ALJ's conclusion the final decision of the Commissioner. (Tr. 1-3). On March 6, 2018, Dadzie filed this action to challenge the Commissioner's final decision. ECF Doc. 1.

Dadzie did not file a timely brief on the merits in this case. On October 10, 2018, the court issued an order requiring Dadzie to file a merits brief within 21 days with the potential consequence that dismissal of the case would be recommended if no brief were filed. ECF Doc. 11. On October 29, 2018, Dadzie filed a short letter-brief stating:

> I am writing this letter and my brief to file a Lawsuit against the Social Security Administration. I feel based on the Medical Evidence that is on file that I am entitled to Social security and no longer can perform my duties due to my medical and mental conditions. I request that you look at the medical evidence very seriously and decide that I can no longer perform my duties as a worker at home such as doing cleaning or general activities at home.

ECF Doc. 12. This statement makes up the entirety of Dadzie's brief. He does not identify any misapplication of legal standards but, arguably, challenges whether substantial evidence supports the ALJ's decision.

**III.   Degree of Review in Un-Briefed Social Security Cases**

Fed. R. Civ. Proc. 41(b) authorizes involuntary dismissal of a civil action for failure to prosecute or to comply with the rules of procedure or a court order. "This measure is available to the district court as a tool to effect management of its docket and avoidance of unnecessary burdens on the tax-supported courts and opposing parties." *Knoll v. AT&T,* 176 F.3d 359, 363 (6th Cir. 1999). A district court considering a dismissal under Rule 41(b) must consider the following factors:

2

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to comply could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Schafer v. City of Defiance Police Dep't,* 529 F.3d 731, 737 (6th Cir. 2008).

In cases like this one, when the claimant does not identify any specific errors on the part of the ALJ, many courts in the Sixth Circuit have approved the outright dismissal of a social security appeal under the Rule 41(b) analysis. *Parker v. Comm'r of Soc. Sec.,* No. 5:16 CV 278, 2017 U.S. Dist. LEXIS 102935 at *3-*4 (N.D. Ohio, May 9, 2017) (citing *Mosley v. Astrue,* No. 2:12 CV 836, 2013 U.S. Dist. LEXIS 44734 at *1 (S.D. Ohio March 28, 2013); (This Court has often dismissed such cases where no statement of errors is filed, especially after the plaintiff has been warned that the Court will probably dismiss the case for that reason. *See, e.g. Duvall v. Comm'r of Soc. Sec.*, No. 2:12 CV 486, 2012 U.S. Dist. LEXIS 168065 (S.D. Ohio Nov. 27, 2012); *Johnston v. Comm'r of Soc. Sec.,* No.1;12 CV 232, 2012 U.S. Dist. LEXIS 158192 (S.D. Ohio Nov. 5, 2012). Other courts have done so as well. *See, e.g., Miles-Richardson v. Comm'r of Soc. Sec.,* 09-11275, 2010 U.S. Dist. LEXIS 42861 (E.D. Mich. May 3, 2010).

On the other hand, some courts in this circuit have taken the approach that not briefing specific reasons for reversing the decision of the Commissioner is permitted by statute, which only requires that a claimant file a complaint. *See, e.g., Kenney v. Heckler*, 577 F. Supp. 214 (N.D. Ohio 1983). These courts reason that a claimant "has no burden to do anything in order to obtain judicial review of the administrative decision except to file a timely complaint. *Wright v. Comm'r of Soc. Sec.,* No. 09 CV 15014, 2010 U.S. Dist. LEXIS 136402 at *1 (E.D. Mich. Dec. 27, 2010). "Once the complaint and a copy of the record are filed, the Court has before it all that is necessary to enter a judgment on the merits." *Wright,* 2010 U.S. Dist. LEXIS at *2 (citing

*Kenney*, 577 F. Supp. 214). But these courts do not state whether the court should apply only a limited form of review because no specific arguments have been asserted against the Commissioner's final decision. *Parker,* 2017 U.S. Dist. LEXIS at *4. Courts are to liberally construe arguments for *pro se* plaintiffs, but "[l]iberal construction does not require a court to conjure allegations on a litigant's behalf." *Erwin v. Edwards*, 22 F. Appx. 579, 580 (6th Cir. 2001).

Faced with an unbriefed social security appeal in *McLaurin v. Comm'r of Soc. Sec.,* No. 15-13912, 2016 U.S. Dist. LEXIS 18139 (E.D. Mich. Dec. 1, 2016) the district court aptly reasoned:

> It would be entirely inappropriate for the Court to provide the same level of analysis to Social Security benefits claimants who do provide briefs in support of their claims and those who do not. That practice would turn the adversarial judicial system on its head, converting the courts into an advocate for claimants and opponent to the Commissioner, thereby compromising the Court's role as impartial adjudicator. Moreover, such a practice would undermine the important role played by Social Security benefits attorneys, who discover meritorious claims for remand and present them to the courts. Granting exhaustive review to non-briefed claims for remand would also vitiate the waiver principle, which provides that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Anthony v. Astrue*, 266 F. App'x 451, 458 (6th Cir. 2008) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)); *Moody v. Astrue*, No. 2:10-CV-0084, 2011 U.S. Dist. LEXIS 8920, 2011 WL 335863, at *1 (S.D. Ohio Jan. 31, 2011) ("[T]he failure to file a brief at all is a waiver of any issue which might require reversal of the administrative decision.")
>
> Providing exhaustive review to non-briefed claims would also create a perverse incentive for Social Security claimants to abstain from arguing in support of their claim. It would prove difficult for disability advocates to compete with a free, court-as-advocate service, given that a judge knows best what sort of arguments he or she finds most persuasive. Should the knowledge of this practice become widespread, Social Security benefits appeals would become increasingly taxing on the courts.

*Id.* at *8-*9. The *McLaurin* court also noted that,

> The Sixth Circuit has not opined on the degree of review due to non-briefed benefits claims, but there is precedent for reversing the Commissioner's decisions [when] they are grossly deficient, even [when] the claimant fails to raise the issue prompting remand. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011) ("Admittedly, Reynolds did not raise this specific objection to the decision below, and generally arguments not raised are abandoned. However, this rule is prudential and not jurisdictional . . . and the requirement for specific objections may be excused in the interest of justice.") (quotation omitted); *Carson v. Barnhart,* 140 F. App'x 29, 39 (10th Cir. 2005) ("Ordinarily, we will not consider an argument raised for the first time on appeal . . . . This rule is not without exceptions, however, and in unusual circumstances we will exercise our discretion to consider an argument not raised in the district court . . . . The argument Mr. Carson raises is purely a legal one, and its resolution is clear."); *Truesdale v. Colvin*, No. CIV-12-1307-HE, 2014 U.S. Dist. LEXIS 17305, 2014 WL 549377, at *4 (W.D. Okla. Feb. 11, 2014) (remanding "in the interests of justice" based on an argument that the claimant did not raise).

The *McLaurin* court then applied an "obvious error" standard, which the undersigned finds to be a well-considered approach for un-briefed cases such as this. Accordingly, the undersigned has reviewed the ALJ's decision denying Dadzie's application for DIB for obvious errors.

## IV. Evidence

### A. Relevant Medical Evidence

On April 30, 2015, Dadzie met with a social worker, Patricia Paul, at Harbor Behavioral Health for an initial treatment plan. (Tr. 512). Ms. Paul's diagnostic assessment noted that Dadzie had previously treated at Harbor from 1999 to 2012. He returned because of recent negative circumstances in his life, e.g. "he resigned from his job of 14 years to accept another position." (Tr. 514). Ms. Paul diagnosed major depressive disorder, recurrent, severe, without psychotic features; panic disorder without agoraphobia; and hypertension. (Tr. 520).

On November 2015, Dadzie complained that his physical condition had deteriorated over time. He reported increased depression and moderate to severe anxiety. However, he had been doing factory work for a temporary agency and stated that he would accept a permanent job if it

5

was offered to him. (Tr. 600). Ms. Paul assessed that Dadzie was less irritable than in previous sessions. (Tr. 601).

In December 2015, Dadzie reported to Ms. Paul that his depression and anxiety were very bad. He had many sources of resentment including his unemployment. (Tr. 589). However, at his medication management appointment on December 21, 2015, he reported that his mood was stable and that his medication was working. He rated his depression and anxiety as 0/10. (Tr. 981).

In January 2016, Dadzie reported doing "worse." He rated his depression as 10/10. He was sleeping 10 to 12 hours a day and was drinking heavily 2 to 3 times a week until "he [fell] out." (Tr. 977). In March 2016, Dadzie had stopped taking his medications. (Tr. 967). He was discouraged from using alcohol to help him sleep. The treatment notes indicated that he had previously dropped off paperwork to get his student loans discharged but was advised that he did not meet the criteria for that debt relief. (Tr. 966).

On April 1, 2016, Dadzie met with Dr. Tanvir Singh, his "new Harbor prescriber." Dadzie told Ms. Paul that he had been biting and scratching his arms for the past 15 years to relieve stress. He reported kicking a hole in his wall the prior month when he had a "mental break down" and drove himself to the hospital, where he was treated and released. He also told Ms. Paul that he would periodically stop taking his medications if he didn't think they were helping. Dadzie reported mowing his lawn and doing yard work in the warmer months. He also reported going to the art museum where he walked around and looked at the art work. (Tr. 913). Dr. Singh decreased the dosages of Dadzie's medications because he had not been taking them. (Tr. 961).

In May 2016, during a psychological consultation, Dadzie reported being interested in working; it had been three months since his last employment. (Tr. 682). He also stated that he did not take his medications consistently because of the side effects. (Tr. 691). In May 2016, Dadzie reported to Dr. Singh that he was doing "okay," despite having moments when he felt down, frustrated or anxious. His mood was also reported to be "okay" and there were no safety concerns noted. (Tr. 951).

In June 2016, Dadzie attended a social cognition group. Treatment notes stated that Dadzie "was on his phone under the table for most of the session." Dadzie stated he planned to take his niece and nephew to a baseball game over the weekend. (Tr. 890).

In August 2016, Dadzie reported no major change in mood but indicated he was still having anxiety attacks. He also reported hearing voices, but they were mostly "manageable." (Tr. 943). In September 2016, Dadzie stated that his mood had improved in the past months. He estimated his depression level at 5-6/10 and his anxiety level as 5/10. (Tr. 938). In October 2016, Dadzie told Phillip H. Fisher, M.D., that he didn't take his medication on some days. (Tr. 754).

### B. Medical Opinion Evidence

#### 1. Consultative Examination – Daniel Watkins, Ph.D. – July 2015

Dadzie met with consultant Daniel Watkins for a psychological evaluation on July 23, 2015. (Tr. 503-510). Dr. Watkins diagnosed alcohol use disorder; unspecified depressive disorder; and unspecified schizophrenia spectrum and other psychotic disorder. Dr. Watkins opined that Dadzie's prognosis was somewhat guarded because he did not seem motivated to change. (Tr. 508).

7

Dr. Watkins concluded his IQ testing of Dadzie did not yield reliable results.  Dadzie's full-scale IQ score was 55, falling in the mildly intellectually disabled range.  But Dr. Watkins found that Dadzie's social, educational and employment history were not consistent with intellectual disability.  (Tr. 507).  Nor were Dadzie's speech and presentation consistent with intellectual disability.  For example, Watkins noted it would be unusual for an individual with a bona fide IQ of 55 to use the phrase "my estranged father."  (Tr. 508).  Dr. Watkins opined that Dadzie's effort with testing tasks was "very questionable."  He further noted that some of Dadzie's responses raised the possibility of malingering.  (Tr. 507).

Dr. Watkins opined that Dadzie would have moderate difficulties in responding appropriately to supervision and to coworkers in a work setting.  But, he did not think that he would have any difficulties understanding, remembering and carrying out simple or moderately complex instructions; in maintaining attention and concentration; maintaining persistence and pace; performing simple and multistep tasks; or in responding appropriately to work pressures in a work setting.  (Tr. 509).

### 2. Consultative Examination – Richard Jackson, M.D. – May 2016

On May 2, 2016, Dadzie underwent a psychiatric evaluation with consultant Richard Jackson, M.D., for purposes of his Michigan workers' compensation claim.  (Tr. 680-702).  Dr. Jackson both reviewed Dadzie's medical records and examined him.  He diagnosed major depressive disorder, recurrent, with questionable psychotic features, complicated by anxiety, personality disorder and limited intellectual functioning. (Tr. 699-700).  Dr. Jackson opined that Dadzie was not motivated to return to employment, and he found there was no evidence that Dadzie was disabled from a psychiatric standpoint causally related to his employment in

8

Michigan.  However, Dr. Jackson opined that Dadzie would have difficulty getting along with others or meeting performance standards because he identified himself as a victim.  (Tr. 700).

### 3.    Treating Physician/Other Source – Patricia Paul, LPCC & Tanvir Singh, M.D. – February 2016 & January 2017

Patricia Paul, Dadzie's counselor, completed a medical source statement on February 22, 2016.  (Tr. 677-679).  Ms. Paul checked boxes indicating that Dadzie had many mental health symptoms.  She wrote that he was "paranoid with persecutory delusions, he is suspicious and paranoid of other people, he is markedly isolated and does not interact well with others."  She opined that he would miss work more than three times a month.  (Tr. 678).

On January 6, 2017, Dr. Tanvir Singh completed a similar questionnaire.  He opined that Dadzie was "suspicious and paranoid.  He [was] markedly isolated with a significant deficit of basic social skills."  (Tr. 1090).  Dr. Singh opined that Dadzie would miss work more than three times a month.  He checked boxes indicating that Dadzie had an extreme loss in many areas of work-related mental activities.  (Tr. 1092).

### 4.    State-Agency Reviewing Physicians

On August 21, 2015, Kristen Haskins, Psy.D., reviewed Dadzie's records and found that Dadzie did not have any significant limitations in the ability to understand and remember instructions.  In the area of sustained concentration and persistence, Dr. Haskins found that there was no evidence of limitation and/or that Dadzie was not significantly limited in his ability to carry out very short and simple instructions or in his ability to carry out detailed instructions; in his ability to maintain attention and concentration for extended periods; in his ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; in his ability to sustain an ordinary routine without special supervision; in his ability to work in coordination with or in proximity to others without being distracted by them; and in

his ability to make simple work-related decisions. She found that he was moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. She found that he had moderate limitations in several categories of social interactions (Tr. 90-91). She found that he was moderately limited in his ability to respond appropriately to changes in the work setting. (Tr. 91).

Irma Johnston, Psy.D., reviewed Dadzie's records on November 3, 2015. She found more limitations in some areas than Dr. Haskins but, for the most part, affirmed the findings of Dr. Haskins. (Tr. 105-108).

### C. Relevant Testimonial Evidence

#### 1. Dadzie's Testimony

Dadzie testified at the administrative hearing on December 1, 2016. Dadzie was 37 years old and lived alone. (Tr. 37-38). He was able to drive and owned a car. (Tr. 39-40). Dadzie had a bachelor's degree in criminal justice and was able to read and write in English. (Tr. 41, 70). During college, he received special disability accommodations such as note-taking assistance and extra time on tests. (Tr. 71). He also completed vocational training for manufacturing and restaurants through the Bureau of Rehabilitation. (Tr. 42). Dadzie did not socialize with his neighbors or family members. (Tr. 66).

Dadzie had worked for fourteen years for a company making ice cream novelties. He worked in different positions at that company, including such as production line and driving a forklift. (Tr. 44). Dadzie left that job due to his conditions of depression, PTSD and hypertension. (Tr. 46). He also stated that he had trouble getting along with his coworkers and was suspended several times. (Tr. 63). After leaving that job, Dadzie began training to work in

a correctional center in Michigan, which did not "work out." After that job, he worked for temporary agencies trying to find other work. (Tr. 47). Dadzie testified he had trouble working full shifts due to his mental conditions and fatigue. (Tr. 63). Dadzie stopped looking for work after July 2015. (Tr. 50).

After Dadzie had been out of work for five to six months, he started receiving mental health treatment, including medication, at Harbor. (Tr. 47). Dadzie also had a history of alcohol use but had been sober for seven months at the time of the hearing. (Tr. 48). Dadzie denied treatment notes related to his alcohol use. (Tr. 49-50).

Dadzie testified that his mental conditions were worsening. (Tr. 52). He denied treatment records stating that he was improving. (Tr. 52-53). In July of 2016, Dadzie went to the emergency room for "a nervous breakdown and chest pain." During that visit, he reported biting his arm over the past 15 years to relieve stress. (Tr. 54). Dadzie testified to increasing problems with anxiety. (Tr. 68). He also reported ongoing hallucinations. (Tr. 66).

Dadzie went to the hospital in April 2015 for a right shoulder strain. He treated with a chiropractor and was prescribed ibuprofen. (Tr. 56-57). Dadzie testified that he had trouble reaching, handling and fingering. (Tr. 58). He stated that he could not push or pull with his arms or legs and was limited to lifting 10 pounds. (Tr. 60).

Dadzie had high blood pressure. He took medication for this condition, but it was not under control. He thought this might affect his ability to stand at work. (Tr. 59).

Dadzie did not do any household chores. A friend helped him go to the grocery store. (Tr. 60). Dadzie testified that he slept all day and did not do anything for entertainment or enjoyment. (Tr. 61). He sometimes used a computer to look on the internet. (Tr. 61). He also watched television, but mostly he slept. (Tr. 65).

**2. Vocational Expert's Testimony**

Vocational Expert ("VE") Robert L. Bond also testified at the administrative hearing. (Tr. 71-78). He testified Dadzie had past work as a production worker and a forklift driver. (Tr. 73). The VE testified that an individual who could perform a full range of work at all exertional levels, but could never climb ladders, ropes or scaffolds; could not work around hazards such as unprotected heights or moving mechanical parts; could occasionally operate a motor vehicle; who was limited to simple, routine and repetitive tasks in a non-fast-paced work environment; could not work at a production-rate pace, such as assembly line work; was limited to being responsible for simple work-related decisions; could respond appropriately to occasional interaction with supervisors and coworkers but with no tandem work with coworkers and no interaction with the general public; was limited to tolerating few changes in the work setting and to routine job duties that remained static and in a stable predictable work setting; any necessary changes needed to incur infrequently and be adequately and easily explained, would not be able to perform Dadzie's past work. (Tr. 73-74). However, he would be able to perform jobs such as laundry folder, hand washer, classified sorter, hand packager, industrial sweeper and laundry worker. (Tr. 74-75). And, there were a significant number of these jobs in the national economy. (Tr. 76). He could still perform these jobs if he required instructions for new tasks to be provided verbally or with a short demonstration rather than in writing. (Tr. 75). A significant number of jobs remained available if the individual had a reaching limitation with his right upper extremity. (Tr. 76). The individual would not be able to work if he needed to lie down during the course of the work day. The VE testified that most employers would tolerate an employee missing one day per month. (Tr. 77). He also affirmed that his testimony was consistent with the *Dictionary of Occupational Titles*. (Tr. 77).

**V.     The ALJ's Decision**

The ALJ's April 4, 2017 decision set forth the following summarized findings:

1. Dadzie met the insured status requirements of the Act through December 31, 2020. (Tr. 13).

2. Dadzie had not engaged in substantial gainful activity since April 9, 2015, his alleged onset date. (Tr. 13).

3. Dadzie had the following severe impairments: depression; anxiety; and post-traumatic stress disorder. (Tr. 13).

4. Dadzie did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (Tr. 14).

5. Dadzie had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he could never climb ladders, ropes or scaffolds, or work around hazards such as unprotected heights, or around moving mechanical parts, and could occasionally operate a motor vehicle. He was limited to simple, routine and repetitive tasks, in a non-fast paced work environment, not at a production rate pace (no assembly line work, for example); he was limited to being responsible for simple, work-related decisions; and he could respond appropriately to occasional interaction with supervisors and coworkers, but with no tandem work with coworkers and no interaction with the general public. He was limited to tolerating few changes in the work setting, defined as routine job duties that remain static and are performed in a stable, predictable work setting. Any necessary changes needed to occur infrequently and be adequately and easily explained. (Tr. 17).

6. Dadzie was unable to perform any past relevant work. (Tr. 22).

7. He was born on July 20, 1979 and was 35 years old, a younger individual on the alleged disability onset date. (Tr. 22).

8. Dadzie had at least a high school education and was able to communicate in English. (Tr. 22).

9. Transferability of job skills was irrelevant because the ALJ determined that Dadzie was not disabled whether or not he had transferable job skills. (Tr. 22).

10. There were jobs existing in significant numbers in the national economy that Dadzie could perform. (Tr. 23).

Based on his findings, the ALJ determined that Dadzie had not been under a disability from April 9, 2015 through the date of the decision. (Tr. 23).

## VI. Law & Analysis

### A. Standard of Review

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence means "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

The court may not try the case de novo, resolve conflicts in evidence, or decide questions of credibility. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir. 1997). If supported by substantial evidence and decided under the correct legal standard, the Commissioner's decision must be affirmed even if this Court would decide the matter differently, and even if substantial evidence also supports the claimant's position. *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(*en banc*).

The court also must determine whether the ALJ decided the case using the correct legal standards. If not, reversal is required unless the legal error was harmless. *See e.g. White v. Comm'r of Soc. Sec*. 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec*., 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue,* 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996); accord *Shrader v. Astrue,* No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue,* No. 1:10-cv-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue,* No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010). Requiring an accurate and logical bridge ensures that a claimant will understand the ALJ's reasoning.

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential analysis: at Step One, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step Two, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step Three, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step Four, the Commissioner determines whether or not the claimant can still perform his past relevant work; and finally, at Step Five, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920. A plaintiff bears the

15

ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. §404.1512(a).

**B.     Analysis**

Dadzie has not presented any arguments in favor his claim. The undersigned has reviewed the record for obvious errors.

The ALJ found in Dadzie's favor at Step One. At Step Two, the ALJ determined that Dadzie had severe impairments. (Tr. 13). Once an ALJ determines that one or more of the claimant's impairments are severe, he must consider the severe and non-severe impairments in the remaining steps of the analysis. Thus, even if Dadzie believes that he had additional severe impairments, the ALJ's failure to designate such impairments as severe would be harmless error. *See Anthony v. Astrue,* 266 F. App'x 451, 457 (6th Cir. Ohio 2008), citing *Mariarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987) (holding that the failure to find that an impairment was severe was harmless error when other impairments were deemed severe).

At Step Three, the ALJ determined that Dadzie's impairments did not meet or medically equal any of the listed impairments. The ALJ considered Dadzie's mental impairments singly, and in combination. (Tr. 14). The ALJ determined that Dadzie had only moderate limitations in the four functional areas, a conclusion consistent with the opinion of Irma Johnston, Psy.D., who reviewed Dadzie's records on reconsideration by the agency. (Tr. 104). Because Dadzie's mental impairments did not cause at least two "marked" limitations or one "extreme limitation," the "paragraph B" criteria for mental impairments was not satisfied. (Tr. 16). Dadzie's impairments also did not meet the "paragraph C" criteria. (Tr. 17). The ALJ noted that no acceptable medical source had mentioned findings equivalent in severity to the criteria of any

listed impairment. (Tr. 17). The ALJ's decision at Step Three was supported by substantial evidence, and there were no obvious errors in the ALJ's Step Three evaluation.

At Step Four of the sequential evaluation, the ALJ determined that Dadzie was capable of performing a full range of work at all exertional levels, but he incorporated into the RFC several limitations related to Dadzie's mental impairments. The ALJ, not a physician, is assigned the responsibility of determining a claimant's RFC based on the evidence as a whole. 42 U.S.C.A. § 423(d)(5)(B); 20 C.F.R. § 416.946(c). The regulations require the ALJ to evaluate several factors in determining the RFC, including all medical evidence (not limited to medical opinion testimony) and the claimant's testimony. *See Henderson v. Comm'r,* No. 1:08 CV 2080, 2010 U.S. Dist. LEXIS 18644, *7 (N.D. Ohio, March 1, 2010) citing, *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004); SSR 96-5p, 1996 SSR LEXIS 2, SSR 96-8p, 1996 SSR LEXIS 5. The final responsibility for deciding the RFC "is reserved to the Commissioner." 20 C.F.R. § 416.927(e)(2). Here, the ALJ followed the regulations when determining Dadzie's RFC by evaluating the medical evidence, (Tr. 18-20) medical opinions (Tr. 20-22) and Dadzie's testimony (Tr. 18).

Regarding the medical opinion evidence, the ALJ assigned great weight to the opinion of consultative examiner, Dr. Watkins. (Tr. 20-21). He also assigned great weight to the opinion of state agency reviewer, Irma Johnston, Psy.D. (Tr. 21). The ALJ assigned little weight to the opinions of Dadzie's counselor Patricia Paul, and Dr. Tanvir Singh. (Tr. 21).

The administrative regulations implementing the Social Security Act impose standards for weighing medical source evidence. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). In making disability determinations, an ALJ must evaluate the opinions of medical sources in accordance with the nature of the work performed by the source. *Gayheart v. Comm'r of Soc.*

17

*Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). The treating physician rule requires that "[a]n ALJ [] give the opinion of a treating source controlling weight if he finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted).

Even if the ALJ does not give the opinion controlling weight, the treating source opinion is still entitled to significant deference or weight that takes into account the length of the treatment and frequency of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and whether the treating physician is a specialist. 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ is not required to explain how he considered each of these factors but must provide "good reasons" for discounting a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); see also *Cole*, 661 F.3d at 938. ("In addition to balancing the factors to determine what weight to give a treating source opinion denied controlling weight, the agency specifically requires the ALJ to give good reasons for the weight actually assigned.")

The ALJ's "good reasons" must be "supported by the evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (quoting Soc. Sec. Rul. No. 96-2p, 1996 SSR LEXIS 9, *12, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)).

Dr. Singh is the only treating physician who provided a medical source opinion in this case. Dr. Singh completed a check-the-box questionnaire related to Dadzie's limitations. (Tr. 1090-1092). Regarding Dr. Singh, the ALJ stated:

18

> The undersigned has given Dr. Singh's opinion little weight, as [he] also did not consider the full effect of the claimant's alcohol abuse, and the clear lack of effort/malingering identified in the consultative examination. [His] opinion is also not persuasive for the exact same reasons that LPCC Paul's extreme limitations are not persuasive; i.e., [he] also made no mention of the many notations in the Harbor records regarding the clinicians' efforts to encourage claimant to "cut back/quit alcohol usage" (e.g. 15F/116); their assistance in helping him search for work, which is not consistent with [his] extreme opinion (id.); his non-compliance with the medication regime (e.g., 15F/111); and improvement when he was compliant (e.g., 15F/88, 93, 101).

(Tr. 21). The ALJ found that Dr. Singh's opinion was not consistent with the evidence in the record. The ALJ cited specific records and stated good reasons for assigning little weight to Dr. Singh's opinion. There is no obvious error in the ALJ's application of the treating source rule to the evidence in this case. Because substantial evidence supported the ALJ's RFC determination and there were no obvious errors in his Step Four analysis, I recommend that the ALJ's decision be affirmed.

At Step Five, the ALJ relied on the testimony of the vocational expert to find that there were a significant number of jobs in the national economy that Dadzie could perform. (Tr. 23). At the administrative hearing, the ALJ questioned the VE regarding whether there were jobs that someone with Dadzie's RFC could perform. The VE testified that there were a significant number of jobs in the national economy that someone with Dadzie's RFC could perform. (Tr. 74-76). He also confirmed that his testimony was consistent with the *Dictionary of Occupational Titles* ("DOT"). (Tr. 77). If the question to the VE accurately portrays a claimant's physical and mental impairments, the VE's testimony will serve as substantial evidence in support of the conclusion that a claimant can perform other work. *See Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 516 (6th Cir. 2010). And, if the ALJ asks the VE whether his testimony is consistent with the DOT, he is under no further obligation to investigate the accuracy of the VE's testimony. *Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008);

19

*Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009); *see also Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009). "Absent an objection to the vocational expert's testimony, [an] ALJ reasonably relie[s] on the testimony." *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 468 (6th Cir. 2017) (citing *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006)) ("Nothing in SSR 00-4p, 2000 SSR LEXIS 8, places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct.") Because substantial evidence supported the ALJ's Step Five determination and there were no obvious errors in his analysis, I recommend that the ALJ's decision be affirmed.

## VII. Recommendation

The ALJ's decision is supported by substantial evidence and Dadzie has not identified any error of law, nor is any error obvious from a review of the record. I recommend that the final decision of the Commissioner be **AFFIRMED,** pursuant to 42 U.S.C. § 405(g).

Dated: December 26, 2018

Thomas M. Parker
United States Magistrate Judge

---

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Thomas v. Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).